Case number 14-3813, Goldwinder Dhaliwal v. Eric Holder, Jr. Court will argue that it is not to exceed 15 minutes per side. Mr. Shonk for the petitioner. Good morning. May I please the court? Good morning. My name is Paul Shonk. I'm a law firm member of Kennedy and NAMI. I'd like to introduce my colleague, Michael Tudor. This is the first time I had the privilege of appearing before this court, so I'm very honored to be here. I'm going to ask you to keep your voice up, too, because there's a little bit of fuzziness there. Sure. Well, welcome. Your first time. Great. Thank you. These are often the best arguments. I hope so. Well, I want to start by just, in case the court has not been apprised of the fact that my client is no longer in the United States, my understanding of this court's precedence is that this- Voice up, please. Sorry, Your Honor. My understanding of the court's precedence is that this will not mute the issue of- will not mute the court's review. But I wanted to just- I think that's right. Thank you for telling us. Yeah. Your Honors, this case- I want to start by just referring to a recent quote from Judge Posner that a failed marriage is not a fraudulent marriage. This case is about a failed marriage that's been confused with a fraudulent one. So one threshold question raised by the government is, you know, what do we have jurisdiction to look at and what don't we have jurisdiction to look at? One argument they've made is that the IJ's credibility determinations we don't have authority over. What's your response to that? Your Honor, my response to that is the Johns case is very clear that even though the discretionary determination is not subject to review, there is still substantial evidence review. That will necessarily involve some evaluation of the minimal basis for the credibility finding. And that- and that- doesn't that leave us, if that's true, just with the testimony of Inder, the other husband? Not necessarily, Your Honor, because just as in- I've done petitions for review of many asylum cases, for instance. Credibility determinations are reviewed under very deferential standard, but they're still reviewed because part of- is seeing whether there was any basis for the adverse credibility determinations. So you're saying we don't have jurisdiction to review the decision about lack of credibility, but we do have authority to review whether the witnesses were credible? No, Your Honor. I'm saying that part of substantial evidence review, which Johns says still remains, is analyzing whether the credibility determinations were supported by substantial evidence. It's a deferential standard, but I don't think Johns stands for the proposition that credibility determinations are just sacrosanct and that there's no- how can you review a decision for substantial evidence if the IJ can just call it credibility and- Well, let's say you're right about that. What's the abuse of discretion here in terms of this credibility decision when it comes to substantial evidence? The abuse of discretion is- the IJ's decision focuses on some very minor inconsistencies between affidavit that was written many years ago and my client's testimony in court. My client admitted that he was talking about events of the distant past. His memory was not perfect. So the abuse of discretion was focusing on these inconsistencies, and the IJ did not even say which parts of my client's testimony he believed and which he didn't. He only said that these very small inconsistencies completely destroyed his credibility. He didn't even give an opinion as to other portions of his testimony which were more important, namely that he honeymooned with his wife in India, that marriage was consummated in India, that it was surrounded by Indian customary rituals. That, for all we know, we don't know what the IJ thought of that portion of his testimony because he just said he's completely incredible without analyzing the testimony as a whole. Don't we at a minimum have to credit the testimony of Inder? We do. Substantial evidence review, and if we do that, doesn't that provide enough for substantial evidence? Your Honor, respectfully, I don't believe so because Inder had no knowledge of the facts. By his own admission, he was living apart from his wife during the marriage. So essentially the IJ discredited everyone except the one witness who had no knowledge of the relationship, and he really tells nothing about it. The only thing he said was that when he visited the wife, he didn't see the respondent there, but he didn't visit her. He only visited her on some weekends. Incidentally, there were just as inconsistencies in his testimony which were just as significant as the inconsistencies cited in the other, yet the IJ somehow finds him to be completely credible, whereas the others completely destroy their credibility. It just doesn't add up that he's applying the same standards. Also, there's some remarks the IJ made that indicated he was using his own opinions as to what a marriage should be. He says at one point in his decision that the husband, my client, took advantage of an older woman. There's simply no evidence in support of that. He was making an opinion, and interestingly, his one completely credible witness admitted that he married a much younger woman in India and took advantage of her there and abandoned her. However, it didn't enter into the IJ's, that didn't phase the IJ in his evaluation of him. Does your client's criminal conviction impact the relief requested, and if so, how would it impact it? Your Honor, my client pled guilty to solicitation. My understanding of the law is that that is not a, I don't believe that is a deportable offense, Your Honor. I have, I think it would certainly enter into discretion on a, but again, we don't know what the IJ would, how that would impact his discretion. Okay. There were other positive portions of the, well, there were other portions of my client's testimony that were simply ignored. Again, he testified to having detailed knowledge of the interior of his wife's home in the United States, and again, the IJ never talks about what he believes and what he doesn't believe. He only focuses on, there are basically two inconsistencies in my reading of the IJ's decision. One is that my client testified in court that he had a confrontation with the bride's ex-husband in the house. This was the witness that the IJ believed to be the only credible witness. He couldn't, when he was testifying in court, he said that he couldn't remember Mr. Pera, the ex-husband, threatening his life. He could just, he just felt threatened because he had a gun-like object, what looked to be a gun-like object with him. In any case, this is Your Honors, this was alleged to conflict with an affidavit that he'd written years and years earlier where he said that he actually said I threatened your life. This is an example of the sort of just nitpicking. There was a similar episode where the, my client was testifying that he went to Temple. He was a Sikh. He went to Temple with his wife and the IJ said it destroyed his credibility because he couldn't remember the exact amount of times he went to Temple. That he said it was six or seven times during the course of their relationship. And in the IJ's estimation, that didn't add up to once a month as he testified earlier. It was a mathematical, it was very minor mathematical, not even a mistake really. So that, that, those are examples of what the IJ sees done. And, but, to use those, to use those small examples and to just not even comment on the rest of the testimony was, I think, an abuse of discretion. Another point I want to raise is that the regulations, when it talks about the, do I still have time? Yep, yep. The regulations point to evidence that should be considered. Some of the best arguments though are like some of the best shots in the game where you, the final shot is before the light goes on. Keep that in mind. Okay, I will. Thank you. The regulations specifically say that testimony of courtship, it's not only conduct after the marriage. Testimony of courtship, testimony regarding the marriage ceremony should be part of the analysis. The IJ didn't analyze any of that. And this is particularly insensitive of him because we're dealing with foreign marriage customs in India. My client testified at some length about how he and his family, his family and the bride's family view marriage. And how there's no room for divorce, that it's a solemn commitment, that it's accompanied by very elaborate ritual ceremonies. And this was an arranged marriage. Both families came together and that's customary in India. This enters into, does not enter into the IJ's analysis whatsoever. He only talks about their conduct after they came to the United States. When really the relevant inquiry is their intent at the time they were married. But if the court takes that into account, the customs of arranged marriages and how that was sort of militated against this prolonged courtship that I think you're alluding to that the court said there wasn't much of a courtship. And that divorce is frowned upon as basically not allowed. With your client coming to the States and then getting married, I mean getting divorced pretty shortly thereafter, wouldn't that tend to support the IJ's ultimate determination that it was fraud or it was a marriage arranged for the purpose of immigration priorities? Certainly, Your Honor, there's a legal presumption that the marriage, when the marriage ends in divorce less than two years, there's a legal presumption that it was entered into solely to tend to an immigration benefit. However, that presumption is rebuttable. And if you, there was a day and a half of testimony.  The divorce was Sukvir. Sukvir filed for divorce, the bride. It was a what? The woman filed for the divorce. Right. And the evidence showed that, and she was not considered a credible witness, by the way. That's one of the few things I agree with the judge because she perjured herself multiple times. But it was clear that she got the divorce to reunite with her ex-husband. And she. All right. Thank you, Mr. Schant. Appreciate it. Thank you. Good morning. May it please the Court. Lisa Damiano on behalf of the Attorney General. Good morning to you all. Petitioner, in this case, continues to litigate the factual findings and the underlying determinations made by the immigration judge with regard to the inconsistencies, the weight of the evidence, and the credibility. But he fails to identify any legal standard over which this court would have substantial evidence review. The case. Isn't he allowed to bring a substantial evidence argument here? It's our argument that the court should find that it lacks jurisdiction over this argument, over his claim, because the petitioner doesn't allege any legal standard or legal question for which the court would have substantial evidence review. Petitioner's claims are all regarding the weight of the evidence. I thought substantial evidence review was, you know, like whether there's a tribal issue of fact. That's actually a legal question, even though it turns on facts. Okay, well . . . So that's the legal question you're allowed to bring, and I thought that's what we said in Johns. It was my understanding that in Johns, this court first looked at the 8 U.S.C. 1252a2b, which precludes jurisdiction over discretionary decisions and actions by the Attorney General, in conjunction with 8 U.S.C. 1186a.c.4, which states that under the terms of this waiver application, the Attorney General has the sole discretion to weigh evidence for credibility and assess evidence. So if you look at those two provisions in conjunction, the court would lack jurisdiction over any challenges to the credibility or weight of the evidence. Now, Johns also said that you do have jurisdiction to review questions of substantial evidence review, which would implicate a legal question. Here in Petitioner's opening brief, all of his challenges are regarding the credibility of the evidence or the assessment of the evidence. But a substantial evidence inquiry is always going to be about evidence. The substantial evidence review would have to be about a legal standard. So Johns said that the court lacks jurisdiction over the weight and credibility challenges. But you would be measuring that evidence against a legal standard, wouldn't you? Exactly, but the Petitioner doesn't raise that in his opening brief. He spends numerous pages challenging the inconsistencies cited by the immigration judge and quarrels with cherry-picking inconsistencies, crediting one testimonial portion over another testimony, and stating things like the judge ignored evidence. Those are all challenges that go to the assessment of the evidence. He needed to identify the legal standard that the evidence was weighed against, such as what is a good-faith marriage. But Petitioner doesn't say that the agency looked at the standard for good-faith marriage and misapplied the evidence to that standard. Let me ask you, is it possible to appeal only the denial of the hardship waiver without also appealing the marriage fraud finding? Yes, it is. And, well, there's the removability ground for marriage fraud, and then there's the application for relief. Here, the Petitioner only petitioned for review, arguing the application for relief should have been granted. He waived his removability ground argument before the Board, which is noted in the Board's decision at footnote 1. So right now we're only looking at whether or not he was eligible for the waiver, but Petitioner doesn't argue eligibility. He doesn't argue that the legal standard was misapplied. He argues that the judge made an incorrect adverse credibility determination or mischaracterized the evidence or didn't weigh it. Is he biased? I think one or the other. Yes, well, he notes bias, and that would be also with regard to his due process challenge, which is a separate argument altogether. But it's our contention that his brief doesn't sufficiently raise a legal challenge for substantial evidence review. All of his, just like in Johns, where this Court said the Petitioner takes all of her aim, the bulk of her aim is at the evidentiary weighing, the credibility of the evidence. And that is exactly what this Petitioner does. He does not raise what is the legal standard for a good-faith marriage. The agency misapplied the evidence to that standard. So you would say, technically speaking, we still can review for substantial evidence. We just can't review whether certain witnesses were credible given the IJ's findings. Absolutely. The Court, I believe, said in Johns and reiterated in the Singh case, which was unpublished in this Court, that you must basically accept the evidence as is. You have to accept the evidentiary in this type of waiver determination. Because of 8 U.S.C. 1186a, you have to accept the credibility and weight of the evidence determinations by the agency. You can look at then what credible evidence remains and determine whether that credible evidence creates the eligibility for this waiver. Or in this case... I'm a little embarrassed I don't know the answer to this question. I mean, I was just rereading Johns, which is sad enough because I wrote it, but I had to reread it. But how does this work in other settings? So just a typical removal case, where you have a bunch of findings about whether someone was persecuted, for example. Those credibility findings we can... Yes. I see. So this is just about the waiver. I got it. Yes. This is actually a very special circumstance. If we were talking about asylum, if we were talking about cancellation of removal, if we were talking about various other forms of relief, the Court does have review of an adverse credibility finding for substantial evidence. But this waiver has a particular statutory provision, and that's the 8 U.S.C. 1186a.c.4, which states that the credibility and assessment of evidence is in the sole discretion of the Attorney General. And because 8 U.S.C. 1252a.2b precludes jurisdiction of discretionary actions, that's why we argue that this Court lacks jurisdiction. But we concede that you do have substantial evidence review over legal claims. So if petitioner sufficiently articulated a legal question with regard to his eligibility, such as this is the credible evidence and the judge misapplied that evidence to the standard for a good faith marriage, if that was the argument, then you would have jurisdiction to review for substantial evidence. And if the Court does determine that you have, that the petitioner sufficiently raised that legal question, we would just say the vast majority of petitioner's relevant evidence was deemed not credible and that you have to accept that adverse credibility finding in this waiver case. You would say it's just Inder. That's the only testimony we can consider. Yes, that's correct. Only Inder. And I just want to make one point. I know that petitioner has raised that the judge did not take into consideration some other evidence, such as letters from affiants in India about their presence at his wedding ceremony or the customs of the marriage. There were documents and facts that the judge didn't specifically discredit in the decision. However, if you look at the standard for showing a good faith marriage, you have to look at evidence that shows the intent of the parties. And having a wedding invitation or having people say, yes, I was at the wedding ceremony, does not show evidence of Mr. Dollywell's intent when he married his wife. Certainly they had a traditional ceremony in India. Certainly they took a trip for a weekend on a honeymoon. And certainly she petitioned him to come to the United States. But none of those things show intent. The only credible evidence we have of intent is Inder's testimony. And while petitioner claims that he didn't know anything or that he had no knowledge, Inder actually testified he had no knowledge of where Mr. Dollywell lived. That's all he said he had no knowledge of. He said, I have no knowledge of where he lived from December 1999 to April 2000. But I do know he was never at my ex-wife's house when I went to see the children once a week. I never saw any man's possessions. I never saw any belongings. I never saw him. I never confronted him. And I never threatened him. And if we look at that evidence as credible, Mr. Dollywell has no remaining evidence to support his side of the story or his account of the events. And it was his burden to prove through credible evidence that he entered into his marriage in good faith. Just a minute on the second point. Petitioner raises a constitutional challenge to the board's decision. And we argue that that should be rejected because he did not exhaust his constitutional due process claim to the board. It's a procedural due process claim, which the board could have addressed. The allegation of Judge Bias, his claim that he didn't receive a full and fair hearing. So we would argue that the court lacks jurisdiction because it was not exhausted. And on page seven of Petitioner's brief, he actually concedes that the only thing raised to the board below was an abuse of discretion challenge. So he did not exhaust that claim. But even if he did exhaust it, Petitioner does not have a protected liberty interest in a discretionary waiver such as this to support a due process violation. And we would also argue that his constitutional challenges are merely challenges regarding the weight and credibility of the evidence anyway. And if the court is concerned about whether this petitioner received due process, you'll see from the record that he was represented by counsel throughout. He actually changed counsel three times at the immigration judge level at four different attorneys. He received several years of preparation. He was able to file all of his evidence even after the deadline. I think we've got your arguments. Okay. Thank you very much. Good. All right, thank you. We really appreciate it. Mr. Schonke, you've got a little rebuttal. Credibility determinations following the argument of the government would enable IJs to simply characterize everything as a credibility issue. And that's exactly what the IJ did in this case. That wouldn't work perfectly because you have Board of Immigration Appeals review. Yes, Your Honor. They reverse IJs all the time. Sometimes. But I would argue that the BIA brief, which we did not represent at that time, did raise these deficiencies. And the IJ's decision went through all the things I've gone through in terms of ignoring the evidence. So to that extent, it wasn't. But I'm just making the point. This is a congressional directive. It didn't come from the courts. And the congressional directive doesn't leave the IJs on their own. There's still review by the BIA. There's still due process review if the argument is preserved below. So I'm just saying that's Congress. That's not the courts. Yes, Your Honor. There is that jurisdiction stripping provision. But the hardship waiver is something of a misnomer. There's actually different grounds for the waiver. One is extreme hardship. There's different subsections of the waiver. The other, the one that my client applied for, is that the marriage was in good faith, that it was a bona fide marriage, which involves legal standards. There is a helpful distinction that I believe the First Circuit made. It was cited by this court in John's, that's the Cho case, distinguishing between the discretionary decision whether to grant the waiver and the decision whether the marriage was bona fide. The decision whether the marriage was bona fide is a legal decision. It's reviewable. Right. So your light is on. So thank you very much. Congratulations on your first argument. Well done. I don't know, Ms. Damiano, if you've argued before, but you seemed to know what you were doing. So congratulations to both of you. Thank you for your briefs. We'll consider the case. It will be submitted, and the clerk may call the next one.